$400

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

Veronica Fortunato                         :
226 W. Rittenhouse Square                  :
Apt. 2501                                  :
Philadelphia, PA 19103                     :
                                           :        19        3842
                                           :    CIVIL ACTION
                                           :
            Plaintiff,                     :    No.
                                           :
v.                                         :    JURY TRIAL DEMANDED
                                           :
Zarwin Baum DeVito Kaplan                  :
Schaer & Toddy, P.C.                       :
1818 Market Street                         :
13th Floor                                 :
Philadelphia, PA 19103                     :
                                           :        FILED
and                                        :
                                           :        AUG 23 2019
Jay M. Leffler, Esquire                    :        KATE BARKMAN, Clerk
1818 Market Street                         :    By_____ Dep. Clerk
13th Floor                                 :
Philadelphia, PA 19103                     :
                                           :
and                                        :
                                           :
Nancy Landy                                :
1818 Market Street                         :
13th Floor                                 :
Philadelphia, PA 19103                     :
                                           :
            Defendants.                    :

---

## COMPLAINT
### Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201, 2202, 1331(a), 1343 and 42 U.S.C. § 2000e-5(f). The described remedies are sought pursuant to 42 U.S.C. §§ 2000e-5, 1981a, and 1988, and 28 U.S.C. §§ 2201, 2202, 1331(a) and 1343.

2.     Plaintiff has complied with all jurisdictional prerequisites, including those set forth in 42 U.S.C. § 2000e-5.

3.     All Defendants maintain their principal offices in the Eastern District of Pennsylvania, and more specifically, in the Commonwealth of Pennsylvania, at 1818 Market Street, 13th Floor, Philadelphia, PA 19103. Furthermore, the alleged unlawful acts and practices of the Defendants were committed within or upon the direction of Defendants' and/or Defendants' agents within the Commonwealth of Pennsylvania at that location.

## Parties

4.     Plaintiff Veronica Fortunato is an adult individual residing at 226 W. Rittenhouse Square, Apt. 2501, Philadelphia, PA 19103.

5.     Defendant Zarwin Baum DeVito Kaplan Schaer & Toddy P.C. (hereinafter "Zarwin Baum") is a Pennsylvania professional corporation with a principal place of business located at 1818 Market Street, 13th Floor, Philadelphia, PA 19103. Upon information and belief, Defendant Zarwin Baum employs in excess of twenty (20) employees.

6.     Defendant Zarwin Baum is a large, successful and prominent law firm, based in Center City Philadelphia, which largely (but not exclusively) conducts defense litigation.

7.     Defendant Zarwin Baum is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8.     Defendant Jay M. Leffler, Esquire is an adult individual and licensed Pennsylvania attorney regularly practicing law and/or conducting business at 1818 Market Street, 13th Floor, Philadelphia, PA 19103, and at any and all times relevant was a shareholder and/or partner at the law firm of Defendant Zarwin Baum.

9.     Defendant Leffler is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

10.     Defendant Nancy Landy is an adult individual regularly conducting business at 1818 Market Street, 13th Floor, Philadelphia, PA 19103, and at any and all times relevant was the office manager at Defendant Zarwin Baum, and in fact and as further set forth *infra* was the individual who fired Plaintiff on October 10, 2018.

11.     Accordingly, Defendant Landy is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## Facts

12.     In or around April of 2018, Defendant Zarwin Baum hired the Plaintiff as a paralegal, a position with a salary of $52,000 per year, and the Plaintiff was 24 years old.

13.     The Plaintiff was hired to work as a paralegal in a litigation department overseen by Theodore ("Ted") M. Schaer, Esquire, a partner and/or shareholder in Defendant Zarwin Baum.

14.     The Plaintiff was hired for that position, in particular, by an attorney named Joseph R. Bonfig, Esquire, who was also a partner and/or shareholder in Defendant Zarwin Baum.

15.     In April 2018, the Plaintiff was initially assigned to work for Joseph R. Bonfig, Esquire and a second attorney, Katelyn T. Czarnik, Esquire, an associate attorney at Defendant Zarwin Baum, both of whom worked under Ted Schaer, Esquire, as aforementioned.

16.     Shortly after beginning her employment with Defendant Zarwin Baum, the Plaintiff discovered that Defendant Zarwin Baum fostered and promoted a severe, pervasive, malignant, sexually discriminatory, and degrading hostile work environment and party culture in the workplace.

17.     The severe, pervasive, malignant, sexually discriminatory, and degrading hostile work environment and party culture at Defendant Zarwin Baum also consisted of frequent "Happy Hours" at local bars and restaurants, in which female employees of the firm, like the Plaintiff, were often expected to participate and were heavily pressured to engage in binge drinking, despite the obviously degrading and unlawful characteristics of such a party culture in a law firm workplace.

18.     Upon information and belief, in fact, it was capable of happening precisely **because** of that party culture in the workplace at Defendant Zarwin Baum, which served the vulgar interests of the overwhelmingly male attorneys, partners and/or shareholders of the law firm.

19.     Many of Defendant Zarwin Baum's "Happy Hours" took place at Smith's Restaurant and Bar in Rittenhouse Square, a client of Defendant Zarwin Baum just around the corner from the office, which is infamous for the sexually hostile and discriminatory environment in which it serves food and liquor to its patrons. *See* Smith's sexist window signs, and the Philadelphia Inquirer article regarding the same, attached hereto and incorporated herein as Exhibit A.

20.     The hostile work environment and party culture of Defendant Zarwin Baum was such that shortly after the Plaintiff was first hired, Ted Schaer, Esq. asked the Plaintiff if she could pass a drug test, which he immediately followed with, "Just kidding. If you could pass a drug test, then this place wouldn't be for you."

21.     The hostile work environment and party culture of Defendant Zarwin Baum was such that Ted Schaer, Esq. evidently felt free, at a "Happy Hour" office party thrown by Defendant Zarwin Baum at North Bowl, to ask the Zarwin Baum employees in attendance to participate in the drinking confessional game called "Marry, Fuck, Kill" in

3

which said employees were to confess who amongst their colleagues they would like to "marry, fuck, or kill."

22. The party culture of Defendant Zarwin Baum was such that the law firm hosted one and/or multiple Christmas parties at hotels where the law firm would also rent rooms for employees who wanted to consume excessive amounts of alcohol, and/or have sex with other employees, and/or some mixture of the two, including one famous party where a senior partner was seen leaving a hotel room with someone other than his spouse, the police were called because attorneys were doing cocaine in the parking lot, and a female employee was swimming naked in the hotel pool, which a senior partner took as presumptuous license to subsequently begin sending sexually harassing emails to that female employee.

23. Shortly after her employment began at Defendant Zarwin Baum, the Plaintiff discovered that Defendant Zarwin Baum fostered and promoted a severe, pervasive, malignant, sexually discriminatory, and degrading hostile work environment and party culture in the workplace, with overwhelming emphasis on the purchase and/or consumption of both alcohol and/or illegal narcotics, both in the workplace and/or at locations outside the office during events that were nonetheless sponsored, directed, managed and/or paid for by Defendant Zarwin Baum.

24. Defendant Zarwin Baum implicitly and/or explicitly permitted the sale and/or consumption of marijuana and/or alcohol and/or other intoxicants to take place amongst its employees and within the confines of the office and/or in the office's immediately adjacent facilities, such as the parking lot.

25. The Plaintiff learned very quickly that complaints about this severe pervasive, malignant, hostile work environment would fall on deaf ears, as the male attorneys, partners and/or shareholders of the law firm maintained a deliberately indifferent posture towards this hostile work environment and party culture (at best), or an actively perverse interest in maintaining, fostering, and perpetuating the same (at worst).

26. To wit, shortly after beginning her employment at Defendant Zarwin Baum, the Plaintiff learned that Joe Bonfig, Esquire announced to the young male employees in Defendant Zarwin Baum's mailroom that he "did good" by hiring "a hot girl" like the Plaintiff.

27. The Plaintiff also learned that this mailroom also served as the arena in which both Joe Bonfig, Esquire, and Defendant Jay Leffler, Esquire would crow about the vulgar ways in which they wished to have sex with the Plaintiff, humiliating word of which eventually made its way back to the Plaintiff.

28. Joe Bonfig, Esquire thereafter repeatedly articulated an interest in the Plaintiff's personal life, with particular regard to whom she was dating.

29.     The Plaintiff was also requested by Joe Bonfig to go to a conference room and assist him and approximately eight (8) other attorneys with the selection of team names for the  office's "fantasy football league" from a hat, in which the team names were sexually explicit turns of phrase written on slips of paper; upon so arriving at the conference room, the Plaintiff was corralled by approximately nine (9) total attorneys who howled with laughter at the Plaintiff's discomfort as she was forced to pull out such names as "9 inch cocks," and "Big Dick Noles," and because the nine attorneys  had crowded around her, the Plaintiff could not get out of the room.

30.     Occasionally, the pervasive, malignant, sexually discriminatory, hostile work environment and party culture at Defendant Zarwin Baum was fostered in these workplace social situations because the law firm's success is largely due to the efforts of women in subservient positions, who feverishly labor and/or clamor for the benefit of, and approval from, older men in positions of authority and management as the attorneys, partners and/or shareholders in charge of Defendant Zarwin Baum.

31.     The Plaintiff's female co-workers and/or immediate supervisors would often bully the Plaintiff, and exacerbate the labor conditions in which she worked, over the Plaintiff's physical appearance and body, such as being "too skinny," "too tall for high heels," or a being called a "slut" by Sheryl Hunter because the Plaintiff received flowers at the office, the latter of which, upon information and belief, was overheard by a partner, Brian Worley, Esquire, who dutifully reported the "slut" incident to upper management – and in response to which, upper management did nothing about such hostile behavior, whatsoever, because Sheryl Hunter was the secretary and/or paralegal for Ted Schaer, Esq.

32.     Specific female co-workers and/or supervisors of the Plaintiff would also foster a sexually hostile work environment by dressing provocatively, bragging about their sex lives with their spouses, talking about which lawyers in the law firm they'd like to have sex with, or talking about their menstrual cycles, and no superiors at Defendant Zarwin Baum would do anything to curb such behavior.

33.     Upon information and belief, it was a matter of everyday practice that Ted Schaer, Esq. was in charge of receiving every complaint about a hostile work environment and/or party culture, including all of the aforementioned, and it was common knowledge that he would bury every complaint that he received concerning the same and/or otherwise fail to take remedial measures.

34.     Upon information and belief, Defendant Zarwin Baum would conduct sham sexual harassment seminars, which were conducted in a fashion for the firm to claim plausible deniability for the severe and pervasively hostile work environment which it otherwise actively fostered, and in which it regularly conducted business, as detailed *supra*.

35.     Upon information, belief, and all of the aforementioned information, Defendant Zarwin Baum had at any and all times relevant a well settled and ingrained practice and culture of sexual harassment, discrimination and/or retaliation pervading the law firm.

## Specific facts concerning Jay Leffler, Esquire

36.     Plaintiff hereby incorporates averments 1 through 35 as though fully set forth herein at length.

37.     Within the first thirty (30) days of Plaintiff's employment at Defendant Zarwin Baum, Defendant Leffler asked the Plaintiff to follow him into the office kitchen for a story, whereupon Defendant Leffler told the Plaintiff that ten (10) years prior, there was "a girl" "your age" who had worked as a paralegal at Defendant Zarwin Baum, with whom Defendant Leffler had flirted back and forth and with whom he eventually dated. Defendant Leffler then told the Plaintiff that said "girl" once made a joke about whether or not Defendant Leffler had an AARP membership, to which – as Defendant Leffler looked at Plaintiff and recounted – he replied, "You won't be saying that when I fuck you later."

38.     Upon information and belief, Defendant Leffler told this story to the Plaintiff in an effort to convey his sexual success and prowess with young female employees at Zarwin Baum.

39.     Upon information and belief, Defendant Leffler in fact received explicit permission from Defendant Zarwin Baum to engage in a sexual relationship with this unnamed paralegal, a license which subsequently fostered and fueled Defendant Leffler's further actions toward the Plaintiff, as aforementioned and as further set forth *infra*.

40.     By the end of June 2018, the Plaintiff's father had died, after which Defendant Leffler began daily deliveries of apple slices and peanut butter to the Plaintiff's cubicle.

41.     Upon one such delivery, Defendant Leffler asked the Plaintiff to eat the apples in a sexually provocative fashion.

42.     Upon another such delivery, Defendant Leffler delivered the apples to the Plaintiff with a handwritten note which read, "Apple is delicious!  I wonder how you taste?"  A true and correct copy of the note is attached hereto and incorporated herein as Exhibit B.

43.     Defendant Leffler persistently told the client how sexy he found the Plaintiff to be.

44.     Defendant Leffler persistently suggested that he show the Plaintiff pictures of his penis on a number of occasions.

45.     Within approximately sixty (60) days of her initial employment at Defendant Zarwin Baum, and on a daily basis, Defendant Leffler would persistently comment about the Plaintiff's "scent," unnecessarily walk by her desk and stare at her, and comment on Plaintiff's figure and her taste in clothing.

46.     Defendant Leffler made these observations, and exhibited these behaviors, in the eyesight and/or earshot and/or with knowledge thereof by other employees, some of whom were also subjected to Defendant Leffler's confession of lust for the Plaintiff, which were humiliatingly reported by said employee(s) to the Plaintiff, who let other employees at Defendant Zarwin Baum know about his feelings for the Plaintiff and/or his sexual desires for her.

47.     On one occasion, within the confines of an elevator, Defendant Leffler grabbed the Plaintiff's hand, and forced her to rub the crown of his head.

48.     Upon information and belief, Joe Bonfig and/or Defendant Leffler consistently dismissed Plaintiff's complaints about all of the aforementioned as guy talk.

49.     Upon information and belief, in or around October 10, 2018, Plaintiff asked Defendant Leffler to leave her alone and cease his behavior, in response to which Defendant Leffler began shouting and ranting and raving, which brought the Plaintiff to tears.

50.     On October 10, 2018, Plaintiff emailed Defendant Landy (the office manager at Defendant Zarwin Baum) to bring all of these problems to her attention, and requested an appointment to see her.

51.     Instead, Defendant Landy summoned the Plaintiff to a conference room, where Joe Bonfig and the office accountant, Steve, were also present, and upon the Plaintiff's entrance into the room, Defendant Landy said to the Plaintiff, "Chica, we're going to have to let you go."

52.     Defendant Landy then mistakenly presented a boilerplate agreement for severance, which had been previously used for a former employee named Jessica Baker, and demanded that the Plaintiff sign the same within the next seven (7) days, a true and correct copy of which is attached hereto and incorporated herein as Exhibit C.

53.     The Plaintiff obviously would not sign the agreement for a host of reasons, not the least of which was that it pertained to a previous female employee, Jessica Baker.

54.     On December 28, 2018 and January 2, 2019, the Plaintiff filed a complaint concerning all of the aforementioned with the Equal Employment Opportunity Commission (EEOC).[1]

---

[1] Two complaints were filed in an abundance of caution, because the federal government was shut down at the time.

55.     On June 5, 2019, the EEOC issued its right to sue letter to the Plaintiff (at EEOC Charge No. 530-2019-01618), a true and correct copy of which is attached hereto and incorporated herein as Exhibit D.

### PLAINTIFF v. DEFENDANTS
### COUNT I – SEX DISCRIMINATION
### VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2 et. seq.

56.     Averments 1 through 55 are incorporated as though fully set forth herein at length.

57.     Defendant Zarwin Baum had at any and all times relevant a well settled and ingrained, severe, and/or pervasive practice and culture of sexual harassment, discrimination and/or retaliation pervading the law firm, which was and is a substantial reason for the harassment and retaliation that the Plaintiff has suffered heretofore, as aforementioned, *supra*.

58.     As a female employee, Plaintiff belongs to a protected class upon which it is illegal for Defendants to discriminate with regard to her compensation, terms, conditions, or privileges of employment.

59.     Defendants have engaged in unlawful practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), by discriminating against the Plaintiff on the basis of gender in their employment practices, including but not limited to altering the terms, conditions, and/or privileges of the Plaintiff's employment on the basis of her sex.

60.     Defendants have engaged in unlawful practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d), by discriminating against the Plaintiff on the basis of her sex, where the Defendants control, train or retrain their employees with *inter alia* on-the-job training programs.

61.     The Plaintiff's protected characteristic of sex played a determinative factor in all of the Defendants' actions and/or inactions, as aforementioned.

62.     Defendants subjected the Plaintiff to adverse tangible employment actions – such as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significant different job responsibilities, and/or decisions causing changes in terms, conditions, benefits and/or privileges of the Plaintiff's employment benefits.

63.     Defendants were also in violation of Title VII because they were negligent in failing to rectify the sexually intimidating, hostile and/or offensive work environment at Zarwin Baum, examples of which have been detailed as aforementioned.

64.     Indeed, not only did the Defendants fail to rectify the sexually intimidating, hostile and/or offensive work environment at Zarwin Baum, they actually fostered and encouraged the same by allowing Ted Schaer, Nancy Landy, Joe Bonfig and/or Jay Leffler to dismiss Plaintiff's complaints in that regard as aforementioned, thus fostering and encouraging a severe, pervasive, malignant sexually intimidating, hostile and/or offensive work environment.

65.     Plaintiff's attempts at rectifying the same were similarly and summarily dismissed, further fostering and encouraging a severe, pervasive, malignant sexually intimidating, hostile and/or offensive work environment.

66.     Moreover, the Defendants fostered and encouraged a sexually hostile work environment through the aforementioned party culture at the law firm, and in so doing violated Defendant Zarwin Baum's own policies on Equal Employment Opportunity, and/or Harassment, copies of which had been previously provided to the Plaintiff and/or Defendant Jay Leffler.  See Acceptance Forms, attached hereto and incorporated herein as Exhibit E.

67.     The Defendants cannot demonstrate any legitimate nondiscriminatory reasons for their employment actions and/or inactions against the Plaintiff, and any reasons proffered by the Defendants for their actions, individually and/or collectively, are pretextual and can readily be disbelieved.

68.     Alternatively, Plaintiff's protected status played a motivating part in the Defendants' decisions, actions and/or inactions, even if other factors may have also motivated their actions against Plaintiff.

69.     The Defendants acted with the intent to discriminate, as detailed *supra*.

70.     The Defendants were insistent and/or deliberately indifferent to a continuing, egregious course of conduct, as detailed *supra*.

71.     As a result of the Defendants' violations of Title VII, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of Defendants violate Title VII of the Civil Rights Act of 1964;

9

(b) Injunctive relief, enjoining Defendants from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

**PLAINTIFF v. DEFENDANTS**
**COUNT II – HOSTILE WORK ENVIRONMENT**
**VIOLATION OF TITLE VII OF**
**THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2 et. seq.**

72.     Plaintiffs hereby incorporate averments 1 through 71 as though fully set forth herein at length.

73.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *See* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

74.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *See* Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

75.     Respondeat superior liability exists for an employer regarding the acts of non-supervisory employees where, as here, the employer "knew or should have known of the harassment and failed to take prompt remedial action." *See* Andrews v. City of Philadelphia, 895 F. 2d 1469, 1486 (3d Cir. 1990).

76.     Employer liability for co-worker harassment also exists where, as here, "the employer failed to provide a reasonable avenue for complaint." *See* Huston v. Procter & Gamble Paper Prods. Corp., 568 F. 3d 100, 105 (3d Cir. 2009).

77.     In sexual harassment cases, examples of conduct warranting a finding of a hostile work environment include but are not limited to:  verbal abuse of a sexual nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; sexually degrading or vulgar words to describe an individual; pinching, groping and fondling; suggestive, insulting or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances. *See* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) ("discriminatory intimidation, ridicule, and insult"); Meritor Savings Bank FSB v. Vinson, 477 Y.S. 57, 60-61 (1986) (repeated demands for sexual favors, fondling, following plaintiff into women's restroom, and supervisor's exposing

himself); Mandel v. M & O Packaging Corp., 706 F. 3d 157, 168 (3d Cir. 2013) (stressing that inquiry "must consider the totality of the circumstances" rather than viewing component parts separately).

78.     Additionally, the Third Circuit recognizes a hybrid cause of action for hostile work environment based on retaliation, holding that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F. 3d 444, 446 (3d Cir. 2006).

79.     Here, the Defendants' conduct occurred because of Plaintiff's legally protected characteristic and was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment at Zarwin Baum was intimidating, hostile and/or abusive.

80.     The sexually harassing conduct, as aforementioned, directly refers to Plaintiff's sex and the retaliatory harassing conduct refers directly to Plaintiff's protected status and/or activity.

81.     The Defendants delegated to Plaintiff's supervisors and/or co-employees the authority to control the work environment, and they abused that authority to create a hostile work environment.

82.     Sexually explicit, verbally and physically harassing conduct filled the environment of the Plaintiff's office and/or work environment, both on premises and at law firm events at outside locations.

83.     The Defendants knew that the sexually explicit, verbally and physically harassing conduct filled the Plaintiff's office and/or work environment, both on premises and at law firm events at outside locations.

84.     Sexually explicit, verbally and physically harassing conduct caused the Plaintiff to sustain severe emotion distress resulting in physical illness and with serious psychological ramifications.

85.     Plaintiff subjectively regarded the sexually explicit, verbally and physically harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

86.     Additionally, Defendants are liable for a retaliatory hostile work environment because Defendants subject the Plaintiff to a persistent series of grievances including but not limited to repeated acts of intimidation and continued changes to Plaintiff's working conditions.

87.     The Defendants' conduct was both severe and pervasive, as aforementioned in averments 1 through 86.

88.     The Defendants' conduct was physically threatening and humiliating, as aforementioned in averments 1 through 87.

89.     The conduct unreasonably interfered with Plaintiff's work performance.

90.     The Defendants' conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

91.     The Defendants provided a futile avenue for complaint for the Plaintiff.

92.     The Defendants retaliated against the Plaintiff for her complaints.

93.     The Defendants acted upon a continuing course of conduct, as aforementioned.

94.     The Defendants have been previously sued for, and/or have been presented with claims of, similar sexual harassment, retaliation and/or hostile work environment claims, and have failed to change the culture of the law firm to prevent this from happening to employees like the Plaintiff.

95.     As a result of the Defendants' violations of Title VII, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

        (a) Declaratory judgment in the nature of an order declaring that the actions of Defendants violate Title VII of the Civil Rights Act of 1964;

        (b) Injunctive relief, enjoining Defendants from further such violations;

        (c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

        (d) Attorney's fees; and

        (e) Such other relief as this Honorable Court deems appropriate.

### PLAINTIFF v. DEFENDANTS
### COUNT III – RETALIATION
### VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-3 et. seq.

96.     Plaintiff hereby incorporates averments 1 through 95 as though fully set forth herein at length.

97.     Title VII protects employees from retaliation for attempting to exercise their rights under the Act, outlawing "(d)iscrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because (she) has opposed any practice made an unlawful employment practice by this subchapter, or because (she) has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3.

98.     A cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuade a reasonable worker from making or supporting a charge of discrimination." *See* Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006).

99.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3. *See* Moore v. City of Philadelphia, 461 F. 3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.")

100.     Retaliation need not be job-related to be actionable under Title VII; for example, an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. *See* Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 61-62 (2006) (rejecting authority from the Third Circuit and others requiring that plaintiff suffer an adverse employment action in order to recover for retaliation).

101.     Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. *See* Thompson v. North American Stainless, L.P., 131 S. Ct. 863, 868 (2011).

102.     The Defendants discriminated against the Plaintiff because of her protected activity under Title VII.

103.     The Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

104.     The Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

105.    In addition and/or the alternative, the Defendants also discriminated against the Plaintiff by taking materially adverse actions against third parties who engaged in protected activity on the Plaintiff's behalf.

106.    There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

107.    The Defendants acted upon a continuing course of conduct.

108.    The Plaintiff will rely upon a broad array of evidence to demonstrate a causal link between her protected activity and the Defendants' actions and/or inactions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and/or deliberate indifference toward the Plaintiff after Defendants became aware of the Plaintiff's protected activity.

109.    Plaintiff engaged in protected activity by registering her complaints (and/or opposing sex discrimination made unlawful by Title VII) to Ted Schaer, Joe Bonfig, Defendant Leffler, and/or Defendant Landy.

110.    Defendants fired Plaintiff because of this protected activity and/or interfered with her ability to find another job.

111.    As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to financial loss, reputational damage, humiliation and psychological harm.

112.    Upon information and belief, Defendants' conduct was intentional, deliberate, willful, malicious, and reckless, and was conducted with an evil motive and in callous disregard of the Plaintiff's rights, entitling the Plaintiff to punitive damages.

113.    Plaintiff is entitled to all remedies available for violations of Title VII.

114.    As a result of the Defendants' violations of Title VII, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of Defendants violate Title VII of the Civil Rights Act of 1964;

(b) Injunctive relief, enjoining Defendants from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

### PLAINTIFF v. DEFENDANTS
### COUNT IV
### VIOLATION OF THE PENNSYLVANIA
### HUMAN RELATIONS ACT– 43 P.S. § 955 et seq.

115.    Averments 1 through 114 are incorporated as though fully set forth herein at length.

116.    As a female employee, Plaintiff belongs to a protected class upon whom it is illegal for Defendants to discriminate with regard to her compensation, terms, conditions, or privileges of employment.

117.    As aforementioned in detail above, the Plaintiff suffered an adverse consequence to her employment as a direct result of her gender.

118.    This inequity in the terms and conditions of her employment is just one of several factors that clearly indicate the discriminatory nature in which Defendants treated Plaintiff because of her gender, as is more fully set forth above.

119.    Even after the disparity was brought to Defendants' attention, no attempt was made by anyone with decision-making power within the organization to improve the terms and conditions of Plaintiff's employment to a level equal to that of male counterparts at the law firm.

120.    Defendants have engaged in unlawful practices in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, by discriminating on the basis of gender in their employment practices, including but not limited to altering the terms and conditions of the Plaintiff's employment on the basis of her sex.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of Defendants violate the Pennsylvania Human Relations Act;

(b) Injunctive relief, enjoining Defendants from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant thereto;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

## PLAINTIFF v. DEFENDANT ZARWIN BAUM
## COUNT V
## PENNSYLVANIA WHISTLEBLOWER RETALIATION
## 43 P.S. § 1422 et. seq.

121.  Plaintiff hereby incorporates averments 1 through 120 as though fully set forth herein at length.

122.  Among other things, the Whistleblower Law defines an employer as "any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body:…(2) A partnership…(4) A corporation for profit." *See* 43 P.S. § 1422.

123.  On its website, Defendant Zarwin Baum advertises that in practices law in the areas of *inter alia* Charter School Law, Government Relations, and Public Finance, a true and correct copy of which is attached hereto and incorporated herein as Exhibit F.

124.  Accordingly, upon information and belief, Defendant Zarwin Baum is and/or has received money from and/or actively represented a public body, both in the provision of the Defendant's general litigation services as well as in the specific areas of Charter School Law, Government Relations, and Public Finance.

125.  The Whistleblower Law provides that "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrong doing or waste by a public body or an instance of waste by any other employer as defined in this act." *See* 43 P.S. § 1423.

126.  "Wrongdoing includes not only violations of statutes or regulations that are of the type that the employer is charged to enforce, but violations of any federal or state statute or regulation." *See* Golaschevsky v. Dep't of Envtl. Protection, 554 Pa. 157, 162 (1998), *citing* 43 P.S. § 1422.

127.  Plaintiff has extensively alleged Defendant Zarwin Baum's violations of federal and state law herein, both *supra* and *infra*.

128.    In order to plead a retaliation case under the Whistleblower Law, a plaintiff must plead (1) wrongdoing and (2) a causal connection between the report of wrongdoing and adverse employment action. McAndrew v. Bucks County Bd. Of Com'rs, 982 F.Supp.2d 491, 503 (E.D.Pa. 2013).

129.    Plaintiff has extensively alleged wrongdoing and a causal connection of that wrongdoing with the termination of her employment, *supra*.

130.    In analyzing whether the motive for an adverse employment action is retaliatory, courts in the Third Circuit have two factors: "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period." Hussein v. UPMC Mercy Hosp., 466 Fed. Appx. 108, 112 (3d Cir. 2012).

131.    Plaintiff has extensively pled the temporal proximity between her protected activity and the discrimination surrounding the same, and the existence of a pattern of antagonism toward the Plaintiff, *supra*.

132.    As a result of Defendant Zarwin Baum's violations of the Whistleblower Law, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), representing actual damages, compensatory damages, reasonable attorneys' fees, litigation costs, pre and post judgment interest, and adjudication and declaration that the Defendant's conduct as set forth herein is in violation of the Whistleblower Law; lost wages, and all additional general and equitable relief to which the Plaintiff is entitled.

### PLAINTIFF v. DEFENDANTS
### COUNT VI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

133.    Plaintiff hereby incorporates averments 1 through 132 as though fully set forth herein at length.

134.    Plaintiff brings claims against all Defendants for IIED and to hold each Defendant vicariously liable for the acts of the others.

135.    Each Defendants' actions and/or inactions, as aforementioned, was extreme and/or outrageous.

136.    Each Defendants' actions and/or inactions, as aforementioned, was intentional and/or reckless.

137.    Each Defendants' actions and/or inactions, as aforementioned, caused the Plaintiff severe emotional distress.

138.    During Plaintiff's employment, the Defendants intentionally and recklessly harassed and inflicted emotional injury on the Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

139.    Defendants verbally, mentally and physically abused the Plaintiff and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

140.    As a direct and proximate result of the Defendants malicious and conscious wrongful actions and/or inactions, Plaintiff has sustained severe emotional distress resulting in bodily injury and damages supported by medical evidence.

141.    As a result of Defendants' actions and/or inactions, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), representing actual damages, compensatory damages, reasonable attorneys' fees, litigation costs, pre and post judgment interest; lost wages, and all additional general and equitable relief to which the Plaintiff is entitled.

## PLAINTIFF v. DEFENDANT LEFFLER
### COUNT VII
### ASSAULT AND BATTERY

142.    Plaintiff hereby incorporates averments 1 through 141 as though fully set forth herein at length.

143.    As aforementioned, Defendant Leffler grabbed the Plaintiff's arm within the confines of an elevator, and forced her to rub the crown of his head, which was sexually suggestive, perverse, sexually pleasurable to himself alone, psychologically pleasurable to himself alone, outrageous, shocking to the conscience, and/or so utterly bereft of any concern for the Plaintiff's well being, as to constitute wanton and/or reckless behavior.

144.    Plaintiff did not consent to this battery in any way, shape or form.

145.    Defendant did not have permission, in any way, to grab the Plaintiff's arm within the confines of an elevator, and force her to rub the crown of his head.

146.    The willful acts and conduct of Defendant Leffler constitutes assault and/or battery upon the Plaintiff.

147.    The assault and/or battery committed by Defendant Leffler upon Plaintiff was unprovoked and in no manner whatsoever due to any act of failure to act on the part of Plaintiff.

148.    The assault and/or battery committed by Defendant Leffler was in pursuit of, and furtherance of, the severe, pervasive, sexually discriminatory and hostile work environment created by Defendant Leffler.

149.    As a direct and proximate result of Defendant Leffler's willful actions of assault and/or battery, the Plaintiff sustained significant injuries, some or all of which may be permanent in nature.  Plaintiff also makes a claim for such injuries, damages and consequences, resulting from the assault and battery, of which she has no present knowledge.

150.    As a further result of the willful assault and battery caused by the Defendant, Plaintiff suffered and underwent great pain, was hindered from performing and transacting her usual affairs and business, and was forced to expend various sums of money to treat her injuries and may in the future be required to expend further sums of money in order to treat her injuries.

151.    As a direct and proximate result of the Defendant's willful actions, Plaintiff was humiliated, and traumatized, some or all of which may result in permanent loss.

WHEREFORE, Plaintiff demands judgment against Defendant for such sums as would reasonably and properly compensate her for her injuries in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000), together with delay damages, interest, costs, attorney's fees, and punitive damages.

### PLAINTIFF v. DEFENDANTS
### COUNT VIII
### CIVIL CONSPIRACY

152.    Plaintiff hereby incorporates averments 1 through 151 as though fully set forth herein at length.

153.    Plaintiff believes and therefore avers that the Defendants, by and through their actions and/or inactions, as more fully set forth in the preceding paragraphs of this Complaint, did intentionally conspire, while acting within the course and scope of their employment and/or supervisor authority, to unlawfully harass, batter and/or assault

Plaintiff, which ultimately caused Plaintiff substantial damages and harm, as aforementioned.

154.    The Defendants' civil conspiracy for their malicious, intentional, and/or reckless actions and/or inactions were a factual cause of and/or directly and proximately caused Plaintiff's substantial damages and harm, as aforementioned.

155.    The above-described actions of the Defendants were so malicious, intentional, and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

156.    The actions of the Defendants therefore constitute civil conspiracy under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, Plaintiff demands judgment against Defendant for such sums as would reasonably and properly compensate her for her injuries in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000), together with delay damages, interest, costs, attorney's fees, and punitive damages.

## DEMAND FOR JURY TRIAL

Trial by a jury of twelve (12) persons is demanded as to all issues.

Respectfully Submitted,

LAW OFFICE OF J. CONOR
CORCORAN, P.C.

Date:  August 23, 2019

J. Conor Corcoran, Esquire
Atty. I.D. No. 89111
1500 John F. Kennedy Boulevard
Suite 620
Philadelphia, PA 19102
Phone: (215) 735-1135
Fax: (215) 735-1175

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Veronica Fortunato | : | |
| | : | **CIVIL ACTION** |
| | : | |
| Plaintiff, | : | No. |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| Zarwin Baum DeVito Kaplan | : | |
| Schaer & Toddy, P.C., et. al., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, J. Conor Corcoran, Esquire, hereby certify that a true and correct copy of the Complaint in the above captioned matter has been sent to the following by first class, United States mail:

Defendants Zarwin Baum, Leffler and Landy
1818 Market Street, 13th Floor
Philadelphia, PA 19103

Respectfully Submitted,

LAW OFFICE OF J. CONOR
CORCORAN, P.C.

Date:  August 23, 2019

J. Conor Corcoran, Esquire
Atty. I.D. No. 89111
1500 John F. Kennedy Boulevard
Suite 620
Philadelphia, PA 19102
Phone: (215) 735-1135
Fax: (215) 735-1175

# EXHIBIT A



JUNE 22, 2017

# Philly bar's latest vulgar sign sparks online outrage

Misogynistic joke prompted meeting between Smiths' manager and resident

 BY **DANIEL CRAIG**
*PhillyVoice Contributor*



*CHARLES BELLINGER/FACEBOOK*

This sign outside Smiths Bar & Restaurant in Center City caused controversy online, with some claiming the message was sexist and misogynistic. It reads: "How you spend $100 on makeup just to have broke dudes *** on your face."



Philadelphia bar with a history of displaying raunchy signs in its front window is coming under fire for the latest sexually-explicit message that greeted patrons and pedestrians earlier this week.

Smiths Restaurant & Bar, at 39 S. 19th St., not far from the bustling Center City corner at 19th and Chestnut streets, has long displayed jokes – oftentimes vulgar ones – handwritten on chalkboards in the bar's front windows. In the past, messages have spurred allegations of sexism and other seemingly make light of violence.

## ALSO ON PHILLYVOICE

Student journalist's graduation gift to high school: an exposé on bus safety

The Philadelphia story behind America's first 'selfie'

Mystery of the 'creepy unmarked helicopters' has been solved

Center City resident Charles Bellinger revived the debate when he posted a Facebook photo of the sign in the window Tuesday that read:

> *"How you spend $100 on makeup just to have broke dudes *** on your face?"*

In the past two days, the bar has received 10 new one-star Yelp! reviews, each chiding the bar, accusing it of being insensitive and inappropriate.

"Look, I'm just a dude that is tired of cheap shots at women and sexism of certain segments of bar culture," Bellinger wrote in a Facebook message. "As a man who doesn't have to endure that sort of misogyny s*** day in and day out I can't stay silent when you can call people to the floor on it."







FACEBOOK
The sign in the window at Smith's Restaurant and Lounge on Rittenhouse Square did not go over well with activists

by Sam Wood, INQUIRER STAFF WRITER

If it was a joke, it went over like a lead balloon.

Women's groups and activists were riled this week after a watering hole on Rittenhouse Square in Philadelphia recently put up a sign in its window.

"I like my beer like I like my violence... Domestic," it read, neatly handprinted in colored chalk at Smith's Restaurant and Lounge on S. 19th Street.

It didn't take long for Philadelphia's community activists to assail the restaurant and condemn the sign as being in bad taste.

Article continues below advertisement

A photo of the chalked message quickly circulated on social media outlets, garnering numerous comments of howling outrage.

"This sign in any circumstance would be appalling, but given what we see in Philadelphia every day, it's horrible," said Jeannine Lisitski, executive director of Women Against Abuse.

Domestic violence in Philadelphia is epidemic, Lisitski said. Police responded to about 115,000 domestic violence calls last year, according to the department.

According to John Barry, the bar manager at Smith's, the sign was put up late last week.

Almost immediately, a woman came into complain.

Brendan Smith, the bar's owner said the sign had been up about 30 minutes before it was yanked from the window.

Barry thought the matter was over. But on Wednesday, the photo made a splash on a number of Facebook pages focused on women's issues.

"It was just a big mess," Barry said today. "Oh God, we're very sorry.

"Now we have a new rule that everything has to be approved before it goes up on the chalk board."

In addition to an apology, Barry said he would personally volunteer at an agency that helps to serve battered women.

Women Against Abuse's Lisitski said a crisis councelor spoke with the woman who had written the sign.

The woman, who she did not identify, is a survivor of domestic abuse, Lisitski said. The councelor offered advice to the sign scribe.

"So in a roundabout way, some good came of it," said the bar manager.

Lisitsky said that any intended irony did not excuse the sign.

"Even though it was written by a survivor, I think it's appaling," Lisitski said. "This is not acceptable."

Jill McDevitt, a sexologist who owns the sex-boutique Feminique in West Chester, is not one to shy away from sexual humor. She has a PhD in human sexuality.

But she treats the topic of domestic violence from a different perspective. She sells a t-shirt in her shop that reads: "Real Men Beat Their Meat, Not their Women or Children."

McDevitt was alerted to the restaurant's sign via Facebook.

"Comments and jokes making light of violence against women only reinforces the culture that believes this is OK," she said. "The sign's message perpetuates

violence by putting the onus on the victim, not the perpetrator."

Bar owner Smith said it would never happen again and offered to help with fundraising for Women Against Abuse.

"Please understand that we aren't bad people," Smith wrote to the organization, "just a little immature at times."

Contact staff writer Sam Wood at 215-854-2796, samwood@phillynews.com or @inqwriter on Twitter.

Follow the Inquirer at www.Twitter.com/PhillyInquirer and www.Facebook.com/PhillyInquirer

**Published:** February 23, 2012 — 1:31 PM EST   |   **Updated:** February 23, 2012 — 6:11 PM EST
The Philadelphia Inquirer

## MORE IN NEWS

BUSINESS

### Philly Shipyard makes a play for polar icebreakers

PENNSYLVANIA

### How a Main Line town became the first in Pa. to ban plastic straws

Advertisement

NEWS

### Nor'easter: How it will impact your Saturday

Bullied in school, a Northeast Philly woman won a $500,000 judgment. Her case could ripple.

A Steven Tyler wig, a 'Hammer' - and Halloween laughter galore | Maria Panaritis

Eagles hope London getaway perfect timing as they struggle to save their season

Prosecutors: Pa. lawmaker admitted she broke the law

5 years later, justice for DJ murdered in South Street ice cream shop

City Council bill would ban cashless stores in Philly

# EXHIBIT B



EXHIBIT C

# AGREEMENT AND RELEASE

ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER & TODDY, P.C., its affiliates, subsidiaries, divisions, successors and assigns (collectively, the "Employer") and Jessica Baker, her heirs, executors, administrators, successors, and assigns (collectively, the "Employee"), agree that:

**Separation Date.** Employee's last day of employment with Employer was October 10, 2018.

1. **Separation Pay.** In consideration for signing the Agreement and Release and compliance with the promises made herein, Employer agrees to pay to Employee, in the course of Employer's regular payroll cycle, separation pay equal to her regular salary equivalent to two weeks pay, less all applicable payroll deductions. The payment will be made on the first regular pay date following the execution of the Agreement by Employee. Employee understands and agrees that the separation pay is "severance" and does not constitute payment for any services performed after the Separation Date. Employee acknowledges that the Agreement was given to her on October 10, 2018.

Employee understands that she has seven (7) business days within which to execute this Agreement and deliver same to the Employer.

2. **No Other Payments.** Employee understands and agrees that she would not receive the monies and/or benefits specified in paragraph "2" above, except for her execution of the Agreement and Release and the fulfillment of the promises set forth below. Employee acknowledges the sufficiency of the consideration for the Agreement and Release. Employee further acknowledges that she has no entitlement to, or any right to make any claim for, any additional payments, benefits, bonus, severance pay, or other compensation by the Employer or its affiliates of any kind whatsoever.

3. **Release of Claims.** Employee knowingly and voluntarily releases and forever discharges Employer and the current and former employees, officers, directors and agents thereof (collectively referred to throughout the remainder of the Agreement as "Employer"), of and from any and all claims, known and unknown, Employee has or may have against Employer as of the date of execution of the Agreement and Release, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, as amended 1991; The Employee Retirement Income Security Act of 1974, as amended ("ERISA"); The Americans with Disabilities Act of 1990, as amended; The Age Discrimination in Employment Act of 1967, as amended; The Older Workers Adjustment and Retraining Notification Act, as amended; The Pennsylvania Human Relations Act, as amended; Any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; Any public policy, contract, tort, or common law; Any alleged oral or written contract; or Any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters. Employee is not waiving any rights or claims that may arise in connection with the enforcement of the Agreement, or any rights or claims which cannot legally be waived by the Agreement; except that Employee waives her right to obtain any monetary damages in any administrative proceeding brought before the Equal Employment Opportunity Commission, the Pennsylvania Human Relations Commission, or the Philadelphia Commission on Human Relations. Subject to the foregoing, the Agreement shall operate as a general release of any and all claims to the fullest extent of applicable law.

1

5. **Confidentiality of Terms of Agreement**. Employee agrees not to disclose any information regarding the existence or substance of the Agreement and Release, except to her spouse, tax advisor, and an attorney with whom Employee chooses to consult regarding her consideration of the Agreement and Release. Employee also affirms she has not divulged any proprietary or confidential information of Employee and will not divulge such information at any time hereafter.

6. **Mutual Non-Disparagement**. Employee and Employer mutually represent and agree that they shall refrain from making written or oral statements to any person or entity with whom any of the parties has had or has a business or social relationship or to the press, or to any other person or entity, which may reasonably be expected to impugn the character, integrity or ethics of the Employee or Employer Releasees, or damage the business, image or reputation of Employee or Employer Releasees.

7. **Governing Law, Jurisdiction and Interpretation**. The Agreement and Release shall be governed and conformed in accordance with the laws of the Commonwealth of Pennsylvania. Employee agrees to jurisdiction of the courts of the Commonwealth of Pennsylvania over her person. Should any provision of the Agreement and Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of the Agreement and Release in full force and effect.

8. **Non-Admission of Wrongdoing**. The parties agree that neither the Agreement and Release nor the furnishing of the consideration for the Release shall be deemed or construed at anytime for any purpose as an admission by either party of any liability or unlawful conduct of any kind.

9. **Amendment**. The Agreement and Release may not be modified, altered or changed except upon express written consent of both parties where specific reference is made to the Agreement and Release.

10. **Entire Agreement**. The Agreement and Release sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties, except. Employee acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept the Agreement and Release, except for those set forth in the Agreement and Release.

11. **Severability**. If any provision of the Agreement and Release is determined to be invalid or unenforceable, the provision shall be deemed to be severable from the remainder of the Agreement and Release and shall not cause the invalidity or unenforceability of the remainder of the Agreement and Release.

**EMPLOYEE ACKNOWLDEGES THAT HAVING ELECTED TO EXECUTE THE AGREEMENT AND RELEASE, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH "2" ABOVE, EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THE AGREEMENT AND RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST EMPLOYER.**

**IN WITNESS WHEREOF,** the parties, intending to be legally bound, hereto knowingly and voluntarily executed the Agreement and Release as of the date set forth below.

EMPLOYEE

By _____
    **VERONICA FORTUNATO**

Date: _____

ZARWIN, BAUM, DEVITO, KAPLAN
SCHAER & TODDY, P.C.

By: _____
    **MITCHELL S. KAPLAN, ESQ.**

Date: _____

# EXHIBIT D

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Veronica Fortunato<br>1500 John F. Kennedy Boulevard, Suite 620<br>Philadelphia, PA 19102 | From: Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2019-01618 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*

June 5, 2019
*(Date Mailed)*

Enclosures(s)

**Jamie R. Williamson,
District Director**

| | |
|---|---|
| cc: Nancy Landy<br>Human Resources<br>ZARWIN BAUM DEVITO KAPLAN SCHAER TODDY PC<br>1818 Market Street<br>13th Floor<br>Phila, PA 19103 | Conor J. Corcoran, Esq.<br>LAW OFFICE OF J. CONOR CORCORAN, P.C.<br>1500 JFK Blvd., Suite 620<br>Philadelphia, PA 19102 |

Enclosure with EEOC
Form 161-B (11/16)

**INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
*before 7/1/10* – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT E

VMF 0015

## ACKNOWLEDGMENT OF ATTENDANCE AT ANTI-HARASSMENT TRAINING

I hereby acknowledge that on January 16, 2018, I attended Anti-Harassment Training provided by my employer, Zarwin, Baum, DeVito, Kaplan, Schaer, Toddy, P.C. I acknowledge that I was afforded an opportunity to ask any questions I may have about the information presented at the training or about the firm's anti-harassment policy.

Print Employee Name:                          Employee Signature:

_Jay LEFFLER_                                 _[signature]_

Date: _1/16/18_

# EXHIBIT F

8/23/2019

Zarwin Baum | Philadelphia and New Jersey Attorney Practices

CALL TOLL FREE: 855-833-3604

**ZARWIN • BAUM • DeVito**
**KAPLAN • SCHAER • TODDY • P.C.**
ATTORNEYS AT LAW

| Search site | GO |

PRACTICE AREAS   PEOPLE   ABOUT THE FIRM   NEWS & EVENTS   DIVERSITY   COMMUNITY   CONTACT

PRACTICE AREAS

## PRACTICE AREAS

The lawyers of Zarwin Baum DeVito Kaplan Schaer Toddy do not merely practice law, we serve clients with high-level legal representation in order to meet and exceed their goals. Each attorney's extensive experience helps our team focus on more than legal matters. We share business solutions. The following are some of the industries in which Zarwin Baum has achieved particularly outstanding results for its clients:

Banking

Construction

Energy

Financial Services

Hospitality

Insurance

Manufacturing

Real Estate

Surety

Telecommunications

Trucking

- **Business Practice Group**
  - Charter School Law
  - Commercial Litigation
  - Corporate and Business
  - Employment
  - Environmental and Energy Practice
  - Estate Litigation
  - Estate Planning & Administration of Wills & Trusts
  - Financial Services
  - Franchise
  - Government Relations
  - Guardianship
  - Immigration
  - Non-profit Organizations
  - Petroleum Marketing
  - Public Finance
  - Real Estate
  - Surety/Fidelity/Construction
  - White Collar Compliance / Criminal Defense
  - Zoning and Land Use

- **Casualty & Professional Liability Defense Practice Group**
  - Automobile Insurance Coverage & Liability
  - Construction Defect
  - Construction Site Accident Liability
  - Cyber Liability, Privacy and Data Security
  - Insurance Coverage Law & Bad Faith Litigation
  - Liquor Liability
  - Premises and Habitational Liability
  - Products Liability
  - Professional Liability
  - Property
  - Retail and Hospitality Liability
  - Trucking & Transportation
  - Workers' Compensation

- **Personal Injury**
  - Developmental Disabilities & Custodial Neglect
  - Medical Malpractice
  - Nursing Home

https://www.zarwin.com/practices.php

JS 44 (Rev. 06/17)  *CMR*  **CIVIL COVER SHEET**  *19 - 3842*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Veronica Fortunato

**DEFENDANTS**
Zarwin Baum

**(b)** County of Residence of First Listed Plaintiff  *Phila*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  *Phila*
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Conor Corcoran, 1500 JFK Blvd, Ste Co20
Phila 19102, 215-735-1135

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | **PERSONAL INJURY** | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Title VII - 42 USC 2000
Brief description of cause:
Sex Discrimination / Hostile Work Env. / Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  N/A
DOCKET NUMBER

AUG 23 2019

DATE 8/23/2019
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _Philadelphia, PA_

Address of Defendant: _Philadelphia PA_

Place of Accident, Incident or Transaction: _Phila, PA_

---

**RELATED CASE, IF ANY:**

Case Number: _N/A_ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☐

I certify that, to my knowledge, the within case ☐ is ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _8/23/19_ _____ _89111_
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*
Must sign here

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☒ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
(Please specify): _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (Please specify): _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
(Please specify): _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Conor Corcoran_, counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _8/23/2019_ _____ _89111_
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*
Sign here if applicable

AUG 23 2019

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Fortunato       :       CIVIL ACTION
      v.       :
Zarwin Baum     :       19     3842
              NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

8/23/19         Conor Concorn         Veronica Fortunato
**Date**           **Attorney-at-law**        **Attorney for** Plaintiff

215-735-1135      215-735-1175      Conor@jccesq.com
**Telephone**         **FAX Number**         **E-Mail Address**

(Civ. 660) 10/02

AUG 23 2019